IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Christopher Selby,
    Plaintiff

V.

Case No. 19-cv-530-bbc

Lucas Weber, Lindsay Walker,
LT. Robyn Loden, Sgt. Jason Chatman,
Sgt. Terrence Judd, C.O. Stahl, C.O.
April Bolduan,
    Defendant's.

## COMPLAINT.

Comes Now, the plaintiff, Christopher Selby, proceeding herein, pro-se, pursuant to title 42 U.S.C. & 1983, with his Complaint against the above named Defendant's Selby also invokes the supplemental jurisdiction of the court over his state law claims that are raised herein.

## PARTIES.

1. Plaintiff, Christopher Selby, is a United States Citizen and adult resident of the state of Wisconsin and at all times relevant to this action was confined at as a prisoner at Columbia Corr. Inst. (CCI), located at: P.O. Box 900, Portage, Wis. 53901, and Now housed at: Waupun Correctional Institution, located at: P.O. Box 351, Waupun, Wis. 53963.

2. Defendant's, Weber, Walker, Loden, Chatman, Judd, Stahl, Bolduan, are all United States Citizen and adult resident's of the state of Wisconsin whose employment address is: (CCI) 2925 Columbia Dr., Portage, Wis. 53901.

## STATEMENT OF CLAIM.

3. The plaintiff is diagnosed with Gender Dysphoria Non-Specific, and has been since July of 2015. As a "GD" inmate, plaintiff Selby was labeled by the psychologist and the security dept. at CCI as [Pair with care]; this policy of higher caution when pairing two inmates at CCI as cell-mates was not followed. This was due to the order's given by Unit Manager Lindsay Walker in collusion with secuirty Director Lucas Weber.

4. In Restrictive Housing Units (1) an (2)[RH-1/RH-2], Unit Manager Lindsay Walker and Security Director Lucas Weber, had a unwritten policy of compiling a list of "GD" inmates nd distributing this list to RH-1 an RH-2 inmate workers. (Which is their practice).

5. The list was given for the purpose of having the inmate workers launder "GD" inmate female undergarments, even though plaintiff, whose "GD" diagnosis was "Non-Specific", [Meaning (s)he did not need or own female undergarments), the plaintiff's name was still on this mentioned list.

6. On 12-8-17, at around 12:14pm, Sgt. Jason Chatman came to plaintiff's door in cell-2 on A-Upper tier in [RH-2], and asked if (s)he would to get off the floor.

7. The plaintiff chatman where (s)he was being moved to, as upon information and belief, it is common practice in [RH-2] that inmates get put in a bunk on the same tier, and plaintiff knew there were no open bunks on A-Upper tier.

8. Chatman informed plaintiff (s)he be moving to cell-#26, A-Lower tier, with Inmate Louis D. Walker#558886. At this time plaintiff asked, "Is Walker okay with that?", as (s)he was concerned, having heard Inmate Walker express harsh, homophobic views in the past. Chatman responded: "He doesn't have a choice".

9. When plaintiff was escorted downstairs to A-Lower tier, by Chatman and C.O. Stahl, Inmate Walker was told that he would be getting a cell-mate. When walker saw the plaintiff, he told chatman: "Don't put that fag in my room". Upon information and belief, Walker knew of the rumors surrounding plaintiff's sexual orientation after (s)he was outted by CCI staff, and therefore did not want the plaintiff as a cell-mate.

10. The Staff ordered Walker to submit to restraints, then opened cell#26. When the door opened Walker stepped out into the hallway and stated: "He ain't coming in here", as he stood in the cell doorway.

11. Chatman placed his hand on Walker's chest and gave him verbal and physical cues to step back into the cell. C.O. Stahl ordered Selby to enter cell#26, although Walker was still actively obstructing the entry.

12. The plaintiff Selby complied with the order and squeezed past Walker, who made sure that his shoulder obstructed Selby's shoulder. Chatman was standing directly behind Selby at this time.

13. The door was secured and Walker's restraints were removed. Plaintiff walked towards the door to have the restraints removed when inmate Walker ran behind Selby while (s)he was still restrained and put his arm (right arm) around plaintiff's neck and squeezed with enough pressure to cut off plaintiff's ability to breathe, causing pain and making plaintiff's vision begin to fade out.

14. Inmate Walker also pulled back so as to arch Selby's body, pressing his abdomen into plaintiff's back. This caused plaintiff to feel terror and fear for (s)his/her life, at which time plaintiff began to frantically "tap out" [meaning I give up] on Walker's arm.

15. The plaintiff was unable to breathe so was she was unable to tell Walker to stop. Stahl told chatman to look in cell#26's window, and upon seeing this assault, chatman unholstered his MK3 incapacitating agent (Pepper Spray) and slowly shook it. At that time Walker released plaintiff Selby. Plaintiff then stated to walker, "Really, Mother Fucker?", in disbelief.

16. Chatman then ordered plaintiff to put her hands out of the trap to be uncuffed. Plaintiff's restraints were removed, the trap secured, and chatman and Stahl then left the tier.

17. Chatman and Stahl witnessed Selby being assaulted by Walker and

did not separate them.

18. On second shift at around 4:30pm, during a safety rounds, C.O. April Bolduan who was conducting the round saw plaintiff standing in the cell door window waiting for her to get to cell#26. She asked Selby, "When did you move down here?"

19. On _____, the plaintiff responded, On first shift, but I don't want to be down here. Inmate Walker once again got behind Selby and put his right arm around Selby's neck and squeezed, causing the plaintiff pain, obstructing her airway, and causing her vision to fade out. Bolduan did nothing to stop the assault, merely just walked away.

20. Walker then released Selby, and as Bolduan was walking away Selby yelled out the door:"I don't fucking play like this; I'm sick of him fucking with me!", Bolduan didn't stop to reply.

21. On third shift, December 9, 2017, around 12:50am, plaintiff wrote a note and gave it to sergeant Brock Reeson telling him she felt unsafe and needed to be placed in observation. Plaintiff showed Reeson a stack of blister-packs of her prescribed medications.

22. Reeson notified Lt. Robyn Loden who responded to RH-2 with support staff. Plaintiff gave Reeson the medication cards.

23. When support staff got to cell#26 Sgt. Terrence Judd asked the plaintiff "Is this a valid PSU concern or are you just trying to get away from Walker because of the problem's Sgt. Chatman reported to me?"

24. The plaintiff fearing her disruptive and assaultive cell-mate, stated she didn't want to discuss this matter at the cell door in front of her cell-mate, and would like to talk in the interview room.

25. Lt. Loden had plaintiff Selby cuffed and escorted to the RH-2 interview room. During the interview Selby told Loden she did not feel safe being in that cell with inmate Walker as Walker had repeatedly choked her in front of several staff who did nothing to protect her.

26. The plaintiff stated she would like to go to observation for the night and would not be safe in cell#26. Loden informed the plaintiff that (she) did not fit the criteria for observation, and therefore had two options: either return to cell#26 with inmate Walker, or refuse to lock in and get a conduct report and go back to RH-1.

27. The plaintiff told her she did not want and/or deserve a conduct report, and should not be punished for trying to be safe and trying to get help after being choked twice in front of staff and nothing was done to stop it or help her when she was obviously rightly afraid of Walker.

28. The plaintiff complied to go back to cell#26 because Lt. Loden explained that per DAI#500.70.24 she would not be able to go to observation, however you can go to RH-1 with a conduct report. Selby was forced to go back in the cell with a person that was being violent and assaultive towards Selby.

29. As soon as the plaintiff got back to her cell, and the staff left the tier, Walker accussed Selby of being a "Snitch" and snitching on him and because of that became hostile, verbally aggressive, and threatening.

30. Within a short time, Walker stated "If you want to act like a bitch I'll treat you like one!" and grabbed the plaintiff's left arm and pulled Selby toward him. Selby managed to pull away from him and tried to get on her bunk so it would make it harder for Walker to grab her.

31. Walker once again got the plaintiff in a choke hold using his right arm and squeezing so tightly that she thought she was going to pass out. Selby could not breathe or get free. Walker then used his left hand to roughly grab Selby's left buttock and groin/genital area, causing pain and terror of being raped.

32. In a surge of adrenaline induced by terror, Selby got away and got on the top bunk and grabbed a sharp pencil, as she was in fear for her life. Walker laughed maniacally and said, "you were scared as hell."

33. Selby then told Walker "I don't get down like that! Leave me the hell alone and stay out of my boundries!"

34. Walker said "It won't happen again as long as you check out of my cell". Selby replied: "Okay, but I can't do it on third shift, you saw me try, and they said they'd only move me if I refused to come back and went to RH-1. So, I'll get moved in the morning, even if I have to go to RH-1. Just leave me alone and I'll leave you alone." Walker finally agreed and soon went to sleep.

35. The plaintiff Selby stayed awake all night in terror and at 6:10am count she handed C.O. Bergeren a note stating; "I need to make an emergency PREA call immediately!"

36. Around two hours later the plaintiff was removed from cell#26. Plaintiff had bruising on the right side of her neck, left forearm, left knee, and has been diagnosed with a pulled muscle in her back from the above described incident.

37. The plaintiff in this case filed all Notice of Claims with the attorney's office pursuant to the Wisconsin Statute under 893.82 within the time limits of 120 days of incident.

38. The plaintiff has exhausted all adminstrative remedies regarding the Inmate Complaint at the institution of CCI.

39. Upon Information and belief Chatman and Stani witnessed Selby being assaulted by Walker and did not separate them and/or say anything due to them being very discriminatory when working with the LGBTQ inmates at CCI.

40. RH-2 cells have an emergency call button, installed in every door frame, but these were disconnected years ago by CCI staff. As a result, there is no way for inmates to alert officers of a safety issue while it is happening, unless it is a officer walking pass at the time.

## FIRST STATE LAW VIOLATION.

Incorporating paragraphs 3 thru 40, of the statement of claim in the complaint, plaintiff alleges Defendant's (Weber, Walker, Loden) Violated the policies on safety of the inmate when they are in danger under the (DAI) Sexual abuse and Sexual Harassment Prevention

and Intervention, resource's for inmates.

## SECOND STATE LAW VIOLATION.

Incorporating 3 thru 40, of the statement of claim in the complaint, plaintiff alleges Defendant's, in the above was Negligence in there actions which resulted in the action's.

## FIRST CONSTITUTIONAL CLAIM.

Incorporating 3 thru thru 40, of the statement of claim in the complaint, plaintiff alleges Defendant's(Weber,Walker,Loden)discriminated against Selby by refusing to move him knowing that it would be and continued to be a issue because of Selby being a Gender Dysphoria woman.

## SECOND CONSTITUTIONAL CLAIM.*

Incorporating 3 thru 40, of the statement of claim in the complaint, plaintiff alleges Defendant's violated his 8th an 14th Amendment when they failed to protect Selby against the inmate Walker while he was housed with the plaintiff.

## REQUESTED RELIEF.

1. Issue a Declartory Judgment, that the Defendant's actions and/or ommissions violated plaintiff's constitutional rights and state claims that are mentioned.

2. Issue a Preliminary and Permanent Injunction, directing Defendant's to activate the emergency call button in the cell's at CCI.

3. Issue a Award of Compensatory Damages, against each of the Defendant's in the amount of Fifty Thousand ($50,000)Dollars.

4. Issue a Award of Punitive Damages, against each of the Defendant's both jointly and severtly, in the amount of Fifty Thousand($50,000) Dollars.

5. Award of Nominal Damages.

6. Award of Presumed Damages.

7. All claims are brought against the Defendant's in their personal capacities.

8. Plaintiff Demands a trial by jury on all matters triable.

## CONCLUSION.

Wherefore, the plaintiff respectfully pray this Honorable Court to Grant the requested relief sought herein.

Respectfully Submitted,

I, declare under the penalty of perjury that all statements made herein are true and correct to the best of my personal knowledge.

Dated this ___ day of June, 2019.

Christopher D. Selby#354602
(WCI) P.O. Box 351
Waupun, Wis. 53963

Prepared By:

Oscar Garner#441303

Prisoner to Prisoner
Legal Aid.